UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOEY STRAUSS, *et al.*

    *Plaintiffs,*

v.

THE ISLAMIC REPUBLIC OF IRAN,

    *Defendants.*

Case No. 22-cv-00052-RCL

## MEMORANDUM ORDER

This case arises from four terrorist attacks in Iraq, each involving the same kind of weapon: an explosively formed penetrator ("EFP"). In two of these attacks, the EFPs killed plaintiffs or their relatives. In the other two attacks, the EFPs only caused injuries. Plaintiffs—one U.S. citizen and serviceman, the estate of one U.S. contractor, four U.S. family members, and eleven foreign family members—allege that Iran provided material support and resources for these EFP attacks. Compl. ¶ 22. As a result, plaintiffs have sued Iran under the Foreign Sovereign Immunities Act ("FSIA"). Because Iran ignored the suit, plaintiffs have now moved for a default judgment. Pls.' Mot., ECF No. 21-2. However, the Court cannot grant plaintiffs' motion. Instead, for the reasons outlined below, the Court must dismiss the claims of five plaintiffs and deny plaintiffs' motion for a default judgment.

Before the Court can assess the merits of a case, it must assure itself that it has jurisdiction to entertain plaintiffs' claims. *See, e.g., Cornish v. Dudas*, 715 F. Supp. 2d 56, 60 (D.D.C. 2010). Under the FSIA, "a foreign state is presumptively immune from the jurisdiction of United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993). Plaintiffs argue

1

that Iran is not immune from suit in this case because of the FSIA's terrorism exception, which says that a foreign state has no immunity:

> in any case . . . in which [1] money damages are sought [2] against a foreign state [3] for personal injury or death [4] that was caused [5] by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act if such act or provision of material support or resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency.

28 U.S.C. § 1605A(a)(1). Recently, the D.C. Circuit clarified the scope of the term "extrajudicial killing" as used in § 1605A. *See generally Borochov v. Islamic Republic of Iran*, 22-7058, 2024 WL 995897 (D.C. Cir. Mar. 8, 2024). There, the Circuit made clear that when plaintiffs bring personal-injury claims under the FSIA arising from an "extrajudicial killing," the perpetrator must have *actually killed* someone. It is "not enough to confer jurisdiction under Section 1605A" that "the perpetrator attempted, but failed to commit an extrajudicial killing." *Id.* at *5. Similarly, plaintiffs who bring personal-injury claims under the FSIA arising from a foreign defendant's "material support" for the act of an extrajudicial killing must establish that there was an actual completed killing at some point. *Id.* at *7 ("Section 1605A's text does not support expanding the material-support provision to cover attempted but uncompleted extrajudicial killings.").

In light of the D.C. Circuit's opinion in *Borochov*, the Court must dismiss plaintiffs' Count II and Count III insofar as those counts pertain to the claims of Jacob Zuccaro, James Zuccaro, Jamie Zuccaro, Blake Darsaw, and Jacques Botha. Each of those plaintiffs' claims stem from an EFP attack that did not result in any deaths. *See* Pls.' Mot. 17. Plaintiffs allege that James or Jacob Zuccaro—whom each of the Zuccaros and Blake Darsaw's claims flow from—was injured by an EFP attack in March 2007, but plaintiffs do not allege that anyone was killed in that

attack.[1] Pls.' Mot. 15. Similarly, plaintiffs allege that Jacques Botha's brother—Leon Botha, who is not a plaintiff in this case—was injured by an EFP attack on November 20, 2004. Pls.' Mot. 14. Again, plaintiffs do not allege that Leon or anyone else died in that attack. While the fact that no one died in those attacks is obviously fortunate, *Borochov* makes clear that the Court's jurisdiction here is limited to EFP attacks in which someone was killed. Thus, the Court must dismiss plaintiffs' claims stemming from those attacks where no one died.[2]

The Court will also deny plaintiffs' motion for default judgment. There are several deficiencies in plaintiffs' briefing that suggest the Court should not grant plaintiffs' motion now.

First, plaintiffs demand a jury trial. Am. Compl. 1, 28. However, as plaintiffs' acknowledge in their motion for default judgment—in their very first sentence on jurisdiction, no less—federal district courts have subject matter jurisdiction over "any *nonjury* civil action against a foreign state," so long as an exception to sovereign immunity applies. *See* Pls.' Mot. 16 (emphasis added); 28 USC § 1330(a); *Rishikof v. Mortada*, 70 F. Supp. 3d 8, 16 (D.D.C. 2014) ("[In] crafting . . . exception[s] to sovereign immunity, Congress was careful to maintain the international standard that a foreign state shall not be subject to a jury trial."). Given plaintiffs' recitation of this fundamental requirement, the Court suspects that their request for a jury trial was simply a mistake. While the Court can look past this error, just as it has in other cases, future plaintiffs should be careful to avoid muddying the Court's jurisdiction on the front cover of their complaint. *See* Am. Compl. 1.

---

[1] Plaintiffs' motion confuses whether Jacob or James Zuccaro was injured in the EFP attack. *See* Pls.' Mot. 2 (suggesting that Jacob was a victim of the attack); Pls.' Mot. 15 (suggesting James was a victim of the attack). Either way, plaintiffs' claims stemming from this attack must be dismissed. Further, plaintiffs have since filed a suggestion of death as to James Zuccaro informing the Court of his death in September 2023. ECF No. 22. That death—well over a decade after the EFP attacks in this case—does not affect the Court's analysis in this Order.

[2] Of course, plaintiffs are free to resurrect those claims if the D.C. Circuit's decision in *Borochov* is reversed.

Second, plaintiffs' briefing is deficient as to the standing of the estate plaintiff. Johannes Potgieter was killed in one of the four attacks forming the basis of this suit. Now his estate seeks recovery for pain and suffering that he endured while alive. *See* Compl. 26. Courts must evaluate whether estate plaintiffs who bring claims for injuries suffered during the decedent's life have standing. *See Worley v. Islamic Republic of Iran*, 75 F. Supp. 3d 311, 333 (D.D.C. 2014) ("These [estate] plaintiffs must establish their standing before they may recover for harms suffered during the decedent's lives."); *Taylor v. Islamic Republic of Iran*, 811 F. Supp. 2d 1, 12 (D.D.C. 2011) (noting that "recovery for pain and suffering . . . is not universally available to estate-plaintiffs"). Whether an estate may maintain a cause of action for injuries suffered during the decedent's life is a question that is "governed by the law of the state which also governs the creation of the estate." *Worley*, 75 F. Supp. 3d 311, 333 (D.D.C. 2014) (quoting *Taylor*, 811 F. Supp. 2d at 12).

Plaintiffs present no evidence or argument as to what law governs the creation of the Estate of Johannes Potgieter, nor have they presented any evidence as to what the applicable law says about the availability of damages for pain and suffering. The Court need not divine this information nor scour through foreign treatises; to obtain a default judgment, it is *plaintiffs'* duty to provide "evidence satisfactory to the court." *See* 28 U.S.C. § 1608(e); *Jerez v. Republic of Cuba*, 775 F.3d 419, 423 (D.C. Cir. 2014). So once again, the Court will urge "all FSIA plaintiffs to ensure that their motions for default include evidence and argument as to any applicable state law." *Est. of Farhat v. Islamic Republic of Iran*, 19-cv-03631 (RCL), 2024 WL 706971, at *16 (D.D.C. 2024).

Third, plaintiffs have tripped over yet another jurisdictional hurdle. Under the FSIA's terrorism exception, a district court is only required to hear claims when claimants or victims maintain at least one of four relationships with the United States: a claimant or victim must be (1) a U.S. national, (2) a member of the armed force, (3) an employee of the U.S. government, or (4)

of an individual performing a contract awarded by the United States government. 28 U.S.C. § 1605A(a)(2)(A)(ii). After today's Order, all of plaintiffs' claims will stem from three individuals who were killed in the EFP attacks—Johannes Straus, Johannes Potgieter, and Ignatius du Preez. Plaintiffs argue that the Court must hear claims flowing from those three victims because they were contractors working for the U.S. government. However, the FSIA also requires contractors or employees of the United States to have been "acting within the scope of [their] employment" at the time of their injuries. § 1605A(a)(2)(A)(ii). Plaintiffs have not provided the Court with satisfactory evidence—as opposed to bare assertions—that those killed in the EFP attacks here were acting within the scope of their employment. The Court needs this evidence not just to determine its jurisdiction to hear the claims of any attack victims, but also to assess the claims of the several foreign family member plaintiffs who rely on those attack victims for jurisdiction. *See Est. of Farhat*, 2024 WL 706971, at *16 (explaining how foreign family member plaintiffs "tailgat[e] direct victims . . . to confer jurisdiction"). In other words, this information is vital. The survival of several claims in this case rests on the Court finding that the decedents were contractors for the U.S. government and acting within the scope of their employment when they were killed.

Finally, plaintiffs have provided the Court with no details as to the injuries suffered by the family members plaintiffs. Nearly all of plaintiffs' claims are from family members who allege psychological and emotional injuries due to the EFP attacks. However, plaintiffs have not provided the Court with affidavits, or any other evidence, explaining the family member plaintiffs' injuries. In particular, the Court does not have affidavits from Jean Strauss, Jacobus Strauss, Nicholas Potgieter, Johannes T. Potgieter, Wessel Potgieter, Stephne Hartslief, Charne Bell, or Chantelle Botha. Instead, plaintiffs merely include a few short sentences in their Amended Complaint with generalized, conclusory assertions about the family members' injuries. Am. Compl. ¶¶ 141, 148.

The Court finds that insufficient at this stage in litigation. While courts may rely upon plaintiffs' "uncontroverted factual allegations" in resolving a motion for default judgment, those allegations should be "supported by . . . documentary and affidavit evidence." *See Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 59 (D.D.C. 2010) (Lamberth, C.J.). Plaintiffs' bare assertions fall well short of the mark.

In sum, *Borochov* requires the Court to dismiss the claims of those plaintiffs who allege injuries from EFP attacks that did not kill anyone. And for those plaintiffs whose claims survive *Borochov*, the Court must deny their motion for default judgment. Plaintiffs' briefing leaves the Court with more questions than answers as to its jurisdiction, and "[a] default judgment rendered in excess of a court's jurisdiction is void." *Jerez*, 775 F.3d at 422.

For the reasons set forth above, the Court will **DISMISS WITHOUT PREJUDICE** Count II and Count III of plaintiffs' Amended Complaint [20] insofar as those counts pertain to the claims of Jacob Zuccaro, James Zuccaro, Jamie Zuccaro, Blake Darsaw, and Jacques Botha. Further, plaintiffs' motion [21] for default judgment is **DENIED WITHOUT PREJUDICE** with leave for plaintiffs to supplement and refile their motion within sixty days to address the issues noted in this Order.

**IT IS SO ORDERED.**

Date: March 27 2024

Royce C. Lamberth
United States District Judge