**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **JOEY STRAUSS et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No.  1:22-cv-00052 (RCL)** |
| | ) | |
| **ISLAMIC REPUBLIC OF IRAN,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**REPORT AND RECOMMENDATION OF THE SPECIAL MASTER**
**RE: FSIA CLAIM OF JACQUES BOTHA**

Jacques Botha seeks compensatory damages pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A, for loss of solatium arising out of injuries sustained by his brother, Leon Botha, in an EFP attack in Iraq on November 20, 2004 ("November 20 Attack").  In a related action, *Roberts v. Islamic Republic of Iran*, Case No. 1:20-cv-01227 (RCL), the Special Master recommended Leon Botha be awarded $2 million in damages for pain and suffering.  *See* Report and Recommendation of the Special Master re: FSIA Claims of Leon Botha et al.  In accordance with the Administrative Plan Governing Special Masters, Federal Rule of Civil Procedure 53, and the Federal Rules of Evidence, the Special Master has received and reviewed testimonial and documentary evidence to assist in formulating and recommending those damages to which Jacques Botha may be entitled.

**BACKGROUND**

On November 20, 2004, a four-vehicle personal security convoy was returning to the Baghdad Hotel after completing an escort mission.  Leon Botha was driving the second vehicle

when an explosion detonated, penetrating his armored limousine with shrapnel that struck him in the face and neck. Second Am. Compl. ¶¶ 108–114; Mem. Op. at 11–12, ECF No. 33.

## **PROCEDURAL HISTORY**

Plaintiffs filed their complaint on January 10, 2022 against the Islamic Republic of Iran ("Iran"), ECF No. 1, seeking compensatory damages under 28 U.S.C. § 1605A(c) for EFP attacks in Iraq on November 20, 2004, November 14, 2005, and December 22, 2005—acts facilitated by Iran and perpetrated by its proxies. Plaintiffs served Iran through diplomatic channels, pursuant to 28 U.S.C. § 1608(a)(4), on September 26, 2022. ECF No. 14. Iran's failure to file a response by the statutorily imposed deadline prompted plaintiffs to request entry of default, which the clerk entered on December 29, 2022. ECF No. 17.

On February 27, 2023, plaintiffs amended their complaint to reflect an administrative name change of one claimant. ECF No. 20. On June 8, 2023, plaintiffs moved for default judgment, ECF No. 21, which the Court denied without prejudice on March 28, 2024, citing three jurisdictional flaws, an Article III violation, and evidentiary insufficiency. ECF No. 23. Plaintiffs filed a second amended complaint on May 23, 2024, ECF No. 30, bringing claims against Iran for damages on behalf of the Estate of Johannes Potgieter and intentional infliction of emotional distress claims on behalf of the family members of those injured or killed in the EFP attacks in Iraq. Three days later, plaintiffs moved for default judgment as to liability, ECF No. 31, which the Court granted on March 7, 2025, simultaneously appointing the undersigned to serve as Special Master "to take evidence from the plaintiffs and calculate their damages." Mem, Op. at 2, ECF No. 33.

This Report and Recommendation focuses on the individual compensatory claims brought by Jacques Botha against Iran for its complicity in the November 20 Attack.

Page 2 of 10

## JACQUES BOTHA

### Jacques Botha—Leon Botha's Brother

Jacques Botha supports his prayer for compensatory damages with a declaration dated May 9, 2024 ("JB-Decl.").

### Jacques Botha—Testimony

Jacques Botha is over 18 and, at all relevant times, has been a South African citizen. JB-Decl. ¶ 1.

Growing up, Jacques and Leon "were not just the average pair of brothers, but best friends," who "always had each other's backs." *Id*. ¶ 3. Teenagers when their mother died, the brothers understood "each other's hurt," "supported each other more than any adult," and managed to "get through those difficult days and make it through to adulthood." *Id*. ¶ 4. They were "almost like twins," with an innate ability to discern "when the other one had an off day and when there was cause for concern." *Id*.

Before Leon went to Iraq, he and Jacques talked daily. *Id*. ¶ 5. They were "supportive" of one another and had "lunch together every other day, attend[ed] social events, and just enjoy[ed] life together." *Id*. And when Jacques struggled financially, Leon supported him. *Id*. ¶ 9.

After Leon left for Iraq in October 2004, the brothers spoke as "often as possible." *Id*. ¶ 7. Jacques closely followed any news about Iraq, and whenever he heard about a bombing, "desperately tried to initiate communication and try to get a hold of Leon on Skype to find out if he and all the people I knew with him in Iraq were safe." *Id*. ¶ 11.

When he heard about the November 20 Attack, Jacques again tried to contact Leon, this time to no avail. *Id*. ¶ 12. Feeling "completely helpless," he instinctively "knew there was

something very wrong." *Id*. Jacques "was unable to eat or sleep," and the "stress" made him feel "physically sick." *Id*. ¶ 13. After three days, he was able to contact Leon's colleague, Johann Steenberg, who confirmed that "Leon was involved in the bombing." *Id*. ¶ 14. Johann clarified that, although Leon was "hurt quite badly and had shrapnel in his face and neck," he was one of the fortunate ones who survived the bombing." *Id*. Leon contacted Jacques the next day and related how he had been "involved in a big bombing" where "some civilians" were killed and "some of his coworkers were badly injured." *Id*. He assured his brother that he had been "hospitalized and treated." *Id*.

When Leon returned to South Africa, he showed Jacques "haunt[ing]" photographs of the incident's aftermath. *Id*. ¶ 15. As Leon described the "intensity of the attack," Jacques sensed his brother would "never be the same person again." *Id*. ¶ 16. Despite "receiv[ing] numerous physiological treatments," Leon, once an "outspoken, outgoing, vibrant person," was now " a shadow of himself." *Id*.

Jacques characterizes the bond between Leon and him after the November 20 Attack as "shattered." *Id*. ¶ 17. Leon became "distant, aggressive, short-tempered, very withdrawn, quiet, reserved, and almost estranged." *Id*. The two rarely speak; when they do, their conversations are "abrupt." *Id*. Leon "refuses to go out and socialize," "cannot be around crowds or even go to a restaurant," and has "distanced himself from everyone, including his children." *Id*. Jacques believes the November 20 Attack "destroyed" their relationship. *Id*. ¶ 19.

Jacques "turned to alcohol as a coping mechanism," was hospitalized, "diagnosed with pancreatitis," and forced to "make serious lifestyle changes." *Id*. ¶ 18.

## ANALYSIS

Jacques Botha seeks compensatory relief under 28 U.S.C. § 1605A(c) for loss of solatium. Upon review of the evidence in light of the legal framework set out below, the Special Master considers the viability of his claim and the proper measure of any damages award.

## STANDARD OF PROOF

To recover under the FSIA, a "default winner must prove damages 'in the same manner and to the same extent as any other default winner.'" *Estate of Botvin v. Islamic Republic of Iran*, 873 F. Supp. 2d 232, 242–43 (D.D.C. 2012) (quoting *Wachsman ex rel. Wachsman v. Islamic Republic of Iran*, 603 F. Supp. 2d 148, 160 (D.D.C. 2009)). In the context of a default judgment, courts in this jurisdiction carve a "'clear distinction' in the standard of proof necessary to establish a plaintiff's *entitlement* to damages and to assess the *amount* of those damages." *Rhodes v. United States*, 967 F. Supp. 2d 246, 313 (D.D.C. 2013) (emphases in original) (*quoting Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 562 (1931)). For future damages, a plaintiff must demonstrate entitlement to a "reasonable certainty" or a preponderance of the evidence and prove damages by a "reasonable estimate." *Hill v. Republic of Iraq,* 328 F.3d 680, 684 (D.C. Cir. 2003). For past losses, a plaintiff must "prove the *fact* of injury with reasonable certainty," *Samaritan Inns, Inc. v. District of Columbia*, 114 F.3d 1227, 1235 (D.C. Cir. 1997) (emphasis added), yet need only "reasonably prove" the amount of damages. *Hill*, 328 F.3d at 684.

The quantum of proof necessary to trigger an award of damages "may be established by affidavit or declaration which, upon evaluation, the Special Master 'may accept plaintiffs' uncontroverted evidence as true.'" *Maupin v. Syrian Arab Republic*, 405 F. Supp. 3d 75, 85

(D.D.C. 2019) (quoting *Lanny J. Davis & Associates LLC v. Republic of Equatorial Guinea*, 962 F. Supp.  2d 152, 161 (D.D.C. 2013)).  *See Int'l Rd. Fed'n v. Embassy of the Democratic Republic of the Congo*, 131 F. Supp.  2d 248, 250 (D.D.C. 2001) (permitting plaintiffs to "prove both liability and damages... based on submission of affidavits, without the need for live testimony at a hearing") (citation omitted); *Kim v. Democratic People's Republic of Korea*, 87 F. Supp.  3d 286, 289 n.1 (D.D.C. 2015) (allowing plaintiffs to "establish the necessary proof for damages through affidavits or live testimony") (citation and internal quotation marks omitted).

## SOLATIUM DAMAGES
### (Jacques Botha)

When awarding solatium damages, our courts recognize that family members in direct lineal relationship to the victims injured in a terrorist attack are "presume[d] . . . [to] suffer compensable mental anguish . . . and testimony proving a close emotional relationship will usually be sufficient to sustain an award of solatium damages."  *Kim*, 87 F. Supp. 3d at 290 (quoting *Roth*, 78 F. Supp. 3d at 402).  To maintain uniformity, courts look for guidance in "prior decisions."  *Acosta v. Islamic Republic of Iran*, 574 F. Supp. 2d 15, 29 (D.D.C. 2008).  In the context of emotional distress resulting from injury to immediate family members, courts apply a framework awarding "$4 million, $2.5 million, and $1.25 million to spouses, parents, and siblings, respectively," *Davis v. Islamic Republic of Iran*, 882 F. Supp. 2d 7, 14 (D.D.C. 2012) (quoting *Oveissi v. Islamic Republic of Iran,* 768 F. Supp. 2d 16, 26 n.10 (D.D.C. 2011) (citation omitted)), and children generally receive $1.5 million.  *Id*. (citing cases).

Jacques Botha has presented highly credible testimony that compellingly evidences the close relationship he enjoyed with his brother and the despair and anguish he felt following the November 20 Attack.  Jacques describes being "almost like twins" with Leon—a relationship that only deepened following their mother's death.  They were mutually supportive, spoke daily,

and assisted each other financially.  When Leon deployed to Iraq, the brothers remained in close contact, and when Jacques learned about the November 20 Attack, he panicked, thinking Leon was involved.

Upon Leon's return to South Africa, it was clear his personality had changed.  The brothers are no longer close and rarely speak.  To Jacques, the incident in Iraq shattered their relationship.

The evidence, only briefly recapitulated here, amply demonstrates that Jacques Botha has a viable claim for loss of solatium, one that theoretically entitles him to $1.25 million under established baselines.  That said, the Special Master finds an upward deviation from the *Davis* framework warranted.  The evidence demonstrates a connection between brothers that went beyond "the normal interactions to be expected" in a sibling relationship.  Leon and Jacques were close in age and best friends who survived the death of their mother through mutual support.  Theirs was a bond akin to twins who shared a deep mutual understanding.  They spoke daily, ate lunch together every other day, and attended social events together.  Jacques closely followed Leon's exploits in Iraq and, upon learning of the November 20 Attack, could not eat or sleep until he knew his brother was safe.

In that respect, the relationship between the Botha brothers is analogous to that between William and James Faulk, who were close in age, were placed in the foster system together, "worked for the same employer, engaged in activities together, did homework together and generally enjoyed a relationship more intimate than that shared by most siblings" and whom this Court found to have demonstrated "an especially close relationship" meriting an enhancement. *Relvas v. Islamic Republic of Iran*, 1:14-CV-01752-RCL, 2018 WL 1092445, at *4 (D.D.C. Feb. 28, 2018). *See also Mwila v. Islamic Republic of Iran*, 33 F. Supp. 3d 36, 45 (D.D.C. 2014), *aff'd*

*in part, question certified sub nom. Owens v. Republic of Sudan*, 864 F.3d 751 (D.C. Cir. 2017) (finding an enhancement warranted for twin sharing a "closer-than-normal sibling relationship")

In recommending a final award for Jacques, however, the Special Master is mindful that the solatium baselines give sway to the principles (1) that it is "inappropriate for the solatium awards of family members to exceed the pain and suffering awards of the surviving servicemen," *Davis*, 882 F. Supp. 2d at 28 (citing *Estate of Bland v. Islamic Republic of Iran*, 831 F. Supp. 2d 150, 158 (D.D.C. 2011)) and (2) that "solatium awards for relatives of victims should be proportionate to the pain-and-suffering awards to the victims themselves." *Goldstein v. Islamic Republic of Iran*, 383 F. Supp. 3d 15, 22 (D.D.C. 2019). *See also Spencer v. Islamic Republic of Iran*, 71 F. Supp. 3d 23, 28 (D.D.C. 2014) (noting the "general approach of reducing the solatium awards of family members in rough proportion" to the victim's award for pain and suffering). In that spirit, the courts in *Davis* and *O'Brien* adopted a proportional approach, awarding 80% of the pain and suffering damages to spouses, 50% to parents, 30% to children, and 25% to siblings. *Davis*, 882 F. Supp. 2d at 14; *O'Brien v. Islamic Republic of Iran*, 853 F. Supp. 2d 44, 48 (D.D.C. 2012).

In *Roberts*, the Special Master recommended Leon Botha receive $2 million in damages for pain and suffering. Finding the proportional approach employed in these cases well-reasoned, the Special Master recommends Jacques Botha receive $400,000 ($2,000,000 x 25%). The Special Master further recommends, for the reasons cited above, that Jacques Botha receive a solatium enhancement of $600,000 for a total solatium award of $1 million.

## PREJUDGMENT AND POST-JUDGMENT INTEREST

Plaintiffs request prejudgment and post-judgment interest.  The Special Master recommends their request for prejudgment interest be denied for the reasons articulated in *Maupin*, 405 F. Supp. 3d at 88–98.

Post-judgment interest, however, is not discretionary given the plain language of 28 U.S.C. § 1961(a), providing that "[i]nterest *shall* be allowed on any money judgment in a civil case recovered in a district court," and § 1961(b) providing that interest "*shall* be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield[.]" (Emphases added.)  *See Doe A-1 v. Democratic People's Repub. of Korea,* No. 18-CV-0252 (DLF), 2021 WL 723257, at *9 (D.D.C. Feb. 24, 2021) ("[A]n award of post-judgment interest under this statute is mandatory, not discretionary.").

The Special Master recommends the Court deny plaintiffs' request for prejudgment interest and award post-judgment interest at the statutory rate.

## PUNITIVE DAMAGES

Jacques Botha also seeks punitive damages.  The FSIA provides for the award of punitive damages to punish and deter the actions for which they are awarded, *Saberi v. Islamic Republic of Iran*, 541 F. Supp. 3d 67, 86–87 (D.D.C. 2021), and "[c]ourts routinely award punitive damages in cases brought under the terrorism exception to the Foreign Sovereign Immunities Act." *Frost v. Islamic Republic of Iran*, 419 F. Supp. 3d 112, 116 (D.D.C. 2020).  In *Estate of Bland*, the court relied on the Supreme Court's opinion in *Philip Morris USA v. Williams*, 549 U.S. 346 (2007), and applied a 3.44 ratio, noting that several courts had applied that ratio in FSIA cases.  831 F. Supp. 2d at 158 (citing *Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d

51, 75 (D.D.C. 2010)).  The Special Master recommends the Court award Jacques Botha punitive damages applying the same 3.44 multiplier.

<u>**CONCLUSION**</u>

The Special Master recommends that Jacques Botha receive One Million Dollars ($1,000,000) in solatium damages.  The Special Master further recommends Jacques Botha receive punitive damages based on a 3.44 multiplier, yielding a punitive damages total of Three Million Four Hundred Forty Thousand Dollars ($3,440,000).

Finally, the Special Master recommends prejudgment interest be denied, and post-judgment interest be awarded at the statutory rate.

Dated: May 26, 2025                                    Respectfully submitted,

                                                                       /s/ Alan L. Balaran
                                                                       Alan L. Balaran, Esq.
                                                                       Special Master